IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AMERICAN NEEDLE, INC., )
)
      Plaintiff, )
)
vs. ) No. 04 C 7806
)
NEW ORLEANS LOUISIANA SAINTS, )
et al., )
)
      Defendants. )

## MEMORANDUM OPINION AND ORDER

Defendants, the National Football League (NFL), the owners of the NFL's member teams, National Football League Properties, Inc., and Reebok International, Ltd. (Reebok), move to certify for immediate interlocutory appeal the court's Memorandum Opinion and Order, 2005 WL 1126537 *1 (N.D.Ill. 2005), denying in part their motion to dismiss American Needle's antitrust action alleging violations of the Sherman Act, 15 U.S.C. § 1 *et seq.* Defendants' motion is denied.

In both, the court's opinion on defendants' original motion to dismiss and its opinion on defendants' motion to reconsider, 2005 WL 1563165 *1 (N.D.Ill. 2005), the facts, as alleged by plaintiff, were discussed in some detail. American Needle designs, manufactures, and sells headwear featuring the trademarks and logos of professional sports team. The NFLP licenses the trademarks of the NFL and its member teams, though the teams retain ownership of the intellectual property. Until March 2001, American Needle had a license with the NFLP to use the trademarks of the NFL and NFL teams on its products. However, in December 2000, the NFL, NFLP and NFL team owners decided to grant an exclusive license for use of their

trademarks on headwear and apparel, rather than multiple licenses. The NFLP granted the exclusive license to Reebok. Subsequently, American Needle brought this suit alleging that defendants' agreement constituted monopolization, a conspiracy to monopolize, and an attempt to monopolize various markets in violation of section 2 of the Sherman Act. It also contended that the agreement violated section 1 of the Act because it was a restraint of trade under both the *per se* rule and rule of reason. We granted defendants' motion to dismiss as to plaintiff's claim that the agreement constituted a restraint of trade under the *per se* rule, but denied it as to all other claims.

In their original motion, defendants presented a single, comprehensive argument for dismissal of plaintiff's complaint: a market, for purposes of an antitrust violation, could not be defined by trademarks. Plaintiff alleged in its complaint that there were six relevant markets for purposes of its claims, all of which were defined by trademarks. As stated in our opinion, "Defendants argue that none of these alleged markets . . . can support plaintiff's antitrust claims because market definitions contingent on trademarks are inadequate as a matter of law." 2005 WL 1126537 at *4. Thus, defendants' motion to dismiss did not require the court to distinguish between plaintiff's six alleged markets, which included both plaintiff's input market of licenses to use trademarks and logos, and its output market of goods bearing trademarks and logos. If trademarks could not define a market, then none of plaintiff's alleged markets was viable, and if they could, then all of plaintiff's alleged markets survived this attack. Of course, this did not preclude some or all of the alleged markets from being deficient for some other reason. In the end, we rejected defendants' argument that trademarks and logos could not, as a matter of law, define a market, noting that in this case the trademarks of

the NFL and its member teams serve a different purpose than trademarks found not to constitute a separate market.

Though our opinion on the motion to dismiss analogized to cases involving the licensing of televised sports, our analysis of defendants' argument often referred to American Needle's output market – headwear carrying trademarks and logos. In their motion to reconsider, defendants argued that we improperly considered American Needle's output markets as relevant markets. They contended that we should have focused only on plaintiff's input market – the licenses it purchased to use trademarks and logos on its products. Defendants' motion to dismiss did not argue that the only relevant market was plaintiff's input market, and thus our decision did not resolve this issue. While defendants' motion to dismiss did not distinguish between plaintiff's various alleged markets, their motion to reconsider did attempt to raise this argument. We denied the motion to reconsider, explaining that even if American Needle's input market turns out to be the only relevant, viable market, we would still consider its output market due to the direct link between a restriction on the licensing of these trademarks and their resulting availability to consumers. 2005 WL 1563165 at *3.

In their motion to certify for interlocutory appeal, defendants once again conflate their original argument for dismissal, that trademarks cannot define relevant markets, and their belated argument that only American Needle's input market is relevant. They identify the following question as central to a review of our order on appeal: "In an antitrust suit brought by a manufacturer who complains that it is unable, due to a particular licensor's exclusive license agreement with another manufacturer, to affix that licensor's trademarks to its products, can a relevant market be defined solely by reference to that licensor's trademarks?" Defendants' question focuses on whether, under the given circumstances, plaintiff can define

a relevant market using trademarks. However, in their memorandum in support of their motion they argue that interlocutory appeal of the order is appropriate because of differing opinions over whether the relevant market in this case should be defined by plaintiff's input, the licenses it purchases, or by its output, the headwear that it manufactures. This was not a question presented by their motion to dismiss, nor was it an issue addressed in our memorandum opinion and order. Thus, defendants seek appellate court review of a conflated argument that was never fully presented to or reviewed by this court.

## CONCLUSION

For the foregoing reasons, defendants' motion to certify for immediate interlocutory appeal is denied.

JAMES B. MORAN
Senior Judge, U. S. District Court

Oct. 5, 2005.