IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AMERICAN NEEDLE, INC.,     )
                               )
        Plaintiff,     )
                               )
    vs.              )     No. 04 C 7806
                               )
NEW ORLEANS LOUISIANA SAINTS, )
et al.,                    )
                               )
        Defendants.     )

## MEMORANDUM OPINION AND ORDER

Since 1963 the merchandising of the NFL and constituent team paraphernalia has been through a jointly-owned affiliate, NFL Properties. The 32 teams may own the intellectual property involved, but the exploitation of that property has been delegated to NFL Properties. Over the years, the details of the arrangement have changed, *e.g.*, a trust now acts as a conduit for the transfer of rights from teams to NFL Properties, but the substance of the arrangement is essentially unchanged. The 32 teams each has an equal interest in the enterprise. Thus, although much (perhaps all) of the profits may go to charity, any distribution that may be made after payment of expenses and distribution to charity is equally shared.[1]

It is the responsibility of NFL Properties to assist in the development and protection of the various marks and to implement marketing strategies. Therefore, it coordinates the development of intellectual property rights, promotes consistent branding and quality, and engages in nationwide promotion. That means, for example, that the Green Bay Packers need not find and monitor suppliers for apparel bearing its logos, need not locate outlets in Chicago, Tampa or Seattle, need not unilaterally pursue infringers, and need not coordinate marketing

---

[1] Some minor revenue from sales from local team pro shops may adhere to the benefit of the local team.

strategies with 31 other teams and the NFL. Further, a supplier need not negotiate separate licenses with 32 different teams and the NFL.

For over twenty years NFL Properties granted licenses to plaintiff American Needle, Inc., to use trademarks of the NFL and the (now) 32 teams on headware it manufactured. In 2000, NFL Properties was authorized to enter into an exclusive license with Reebok International Ltd. (Reebok), and it did so. That prompted plaintiff, which lost its license rights, to sue. It does not claim that the NFL and its 32 teams previously acted improperly by delegating to NFL Properties the authority to grant licenses. That was permissible, it contends, so long as the licenses were spread around a number of competitors. It only became an antitrust violation, an illegal conspiracy in restraint of trade violation of Section 1 of the Sherman Act, when NFL Properties granted an exclusive license to Reebok.

We reject the distinction plaintiff urges us to make. The owner or licensor of intellectual property can grant a license to one or to many. *See* Cook, Inc. v. Boston Scientific Corp., 333 F.3d 737, 740-41 (7th Cir. 2003). Even were plaintiff right in its claim that there is a Section 1 antitrust violation (which we reject), and each team had to do its own licensing, each could choose to license many, or just one. The issue, rather, is whether or not the 32 teams can agree on designating a common actor to exploit their various intellectual property rights, and on being bound by the decisions of that common actor. And the answer to that depends upon whether, with regard to the facet of their operations respecting exploitation of intellectual property rights, the NFL and its 32 teams are, in the jargon of antitrust law, acting as a single entity. We conclude that they clearly are, and, accordingly, enter summary judgment for defendants on Counts II and V. That determination is essentially a conclusion that in that facet of their operations they have so integrated their operations that they should be deemed to be a single entity rather than joint ventures cooperating for a common purpose.

*See* <u>Texaco, Inc. v. Dagher</u>, 547 U.S. 1, 6 (2006).[2]

The two cases most relevant to the decision are <u>Copperweld Corp. v. Independence</u> <u>Tube Corp.</u>, 467 U.S. 752 (1984), and <u>Chicago Professional Sports Limited Partnership v.</u> <u>National Basketball Association</u>, 95 F.3d 593 (7th Cir. 1996) ("Bulls II"). In <u>Copperweld</u>, the Supreme Court rejected the concept of intra-enterprise conspiracy and ruled that a corporation and its wholly-owned subsidiary are incapable of conspiring with each other for purposes of the Sherman Act. In doing so, it emphasized that function, not form, controlled. It noted that concerted behavior "deprives the marketplace of the independent centers of decision-making that competition assumes and denies" 467 U.S. at 769. It also concluded that "[C]oordination between a corporation and its division does not represent a sudden joining of two independent sources of economic power previously pursuing separate interests" (id. at770). <u>Copperweld</u> casts considerable doubt upon prior lower court decisions broadly rejecting the single entity concept and, we believe, made it imprudent to rely upon those cases. Perhaps a proper reading of <u>Copperweld</u> leads to the conclusion that in the NFL and most other sports league contexts for league-wide policy other than labor disputes, the leagues are single entities. That is the position taken in Grow, Note: "There is No 'I' in 'League': Professional Sports League and the Single Entity Defense," 105 Mich.L.Rev. 183 (2006). That Note provides a helpful discussion of the status of the defense over time. While Grow's position has considerable appeal, the Seventh Circuit did not go that far in <u>Bulls II</u>, and we therefore turn to <u>Bulls II</u>.

<u>Bulls II</u> recognizes that, antitrust issues aside, how much the NBA charges for national telecasts is for the league to resolve under its internal governance procedures. It is no different

---

[2]Plaintiff also contends that Reebok, also a defendant and supposedly an ardent suitor, itself creates the plurality necessary for Section 1 claims. But if NFL Properties can issue an exclusive license, then whether or not the license, urged, solicited or vigorously argued for the change is irrelevant.

in principle from the question how the clubs divide revenue from merchandise bearing their logos and trademarks. *Id.,* at 597.

Delegated decision-making does not deprive the marketplace of independent centers of decision-making. There is no sudden joining of independent sources of economic power previously pursuing separate interests. NFL Properties has been making the decisions unilaterally or jointly since 1963. Why the NFL should opt for that structure is obvious. To require that 32 teams each take total responsibility for the protection and marketing of its own logos and trademarks in a nationwide market would cause each to be at a competitive disadvantage with other leagues with integrated marketing. Sharing the revenues (or tax deductions), despite some teams being in much larger markets, serves the interest in having the teams relatively competitive. For this facet, in answering <u>Copperweld's</u> functional question, we believe cooperative marketing does serve to promote NFL football and falls on the "unilateral" action side of the line. <u>Dagher</u>, 547 U.S. 1 (2006).

We reach that conclusion while recognizing that others might well disagree, *see, e.g.,* <u>Sullivan v. National Football League</u>, 34 F.3d 1091, 1099 (1st Cir. 1994), that it "is a tough question ...," and that the "cases do not yield a clear principle about the proper characterization of sports leagues ...," <u>Bulls II</u> at 599-600. Plaintiff here emphasizes that the teams, not NFL Properties, own the respective property rights. Ownership (and, thus, ultimate control) does not necessarily defeat the single entity concept. <u>Sunkist Growers, Inc. v. Winckler & Smith Citrus Products</u>, 370 U.S. 19, 29 (1962); <u>City of Mt. Pleasant, Iowa v. Associated Electric Cooperative, Inc.</u>, 838 F.2d 268, 275 (8th Cir. 1988). Indeed, that common ownership and the absence of conflicts are not determinative standards adds to the conceptual difficulties in where to draw the line between what should be deemed a single entity and what should not. *See* <u>Fraser v. Major League Soccer, L.L.P.</u>, 284 F.3d 47, 58 (1st Cir. 2002). We

recognize, as well, that supposed efficiencies in economic arrangements are more the stuff of the rule of reason than of distinguishing between single entities and joint ventures.

The obvious advantages of one-stop exploitation of the intellectual properties of the 32 teams and of those common to the league in a national market do, however, explain in part why the National Football League teams proceeded as they did. The need for competitive balance is obvious as well. The teams agreed to share equally in that market, and they have done so since 1963. They have, through the various forms of NFL Properties, acted as an economic unit. <u>Freeman v. San Diego Association of Realtors</u>, 322 F.3d 1133, 1147-48 (9th Cir 2003). The economic reality is that the separate ownerships had no economic significance in and of itself, and American Needle, Inc. does not suggest that it ever dealt with any of the teams as independent organizations. *See* <u>City of Mt. Pleasant, Iowa v. Associated Electric Cooperative, Inc.</u>, 838 F.2d at 275.

Plaintiff has urged that it needs a great amount of discovery and that any consideration of the single entity concept is premature. We disagree. We believe that the facts that materially bear upon the decisions are undisputed and that they lead undeniedly to the conclusion that the NFL and the teams act as a single entity in licensing their intellectual property. Accordingly, we grant defendants' motion for summary judgment on Counts II and V.

JAMES B. MORAN
Senior Judge, U. S. District Court

_____ July 11 _____, 2007.